**LOCAL UNION NO. 1241 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, by Raymond Freedman, President and Trustee ad litem**

v.

**COLUMBIA BROADCASTING SYSTEM, INC.**

**Civ. A. No. 30816.**

United States District Court
E. D. Pennsylvania.

July 11, 1962.

Louis H. Wilderman, Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for plaintiff.

Kenneth Souser, John R. McConnell, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

GRIM, District Judge.

Defendant discharged from its employ Raymond Freedman, president of plaintiff union, after discovering that and because Freedman had obtained possession ·of, and made notes in his own handwriting from, confidential company memoranda prepared by defendant's negotiators for use in wage negotiations with the union. Freedman represented the union in these negotiations. He refused to say how or from whom he got possession of the memoranda.

The union objected to Freedman's discharge, and under the collective bargaining agreement in effect between the parties the grievance arising therefrom was submitted to arbitration.[1] Freedman testified before the arbitrator, but refused to testify as to the name of the person who showed him the memoranda or as to any of the circumstances under which they were shown to him.

The arbitrator made the following award:

"The grievance is denied. The Company properly discharged Raymond Freedman for 'just cause' under Section 8.01 of the October, 1958, Agreement."[2]

Thereafter, when defendant refused to join in a union request to the arbitrator to review his award, plaintiff union brought this action to vacate, correct, or modify the award. Both parties have moved for summary judgment.

Plaintiff contends:

1. That the arbitrator erred in stating that Freedman alleged that someone else stole the memoranda.

2. That the arbitrator erred in stating that Freedman refused to stand cross-examination of the truth of his defense and that this destroyed it as meaningful evidence, and that the arbitrator must conclude that he stole the notes.

3. That Freedman was entitled to and was denied, the presumption of innocence until proven guilty.

4. That the company produced no evidence that the memoranda had been stolen.

5. That the company's case rested on vague hearsay testimony.

6. That Freedman was denied due process since he was not advised of the charge against him.

7. That since the charge against Freedman was "flagrant misconduct" and since the arbitrator found that his discharge was for "just cause", the charge was not made out and the discharge should be set aside.

8. That the arbitrator may not "hand pick his own charge of 'just cause' in place of" the cause on which the company based the discharge.

9. That the arbitrator erred in ignoring the 14-day notice which the agreement requires where the discharge is for "just cause", and hence "rewrote" the agreement.

1. The collective bargaining agreement set forth in detail how an arbitrator was to be appointed to decide disputes involving grievances and provided also:

"10.04. The decision of the arbitrator shall be final and binding and all expenses of arbitration shall be shared equally by WCAU and the union."

2. Section 8:01 provided: "A Technician [as Freedman was] may be discharged for just cause provided a discharge notice in writing be given to the Technician at least fourteen (14) calendar days prior to the date upon which such discharge is to become effective * * * provided, however, that any Technician may be discharged without notice * * if the cause for the discharge is flagrant misconduct * * *."

Section 3:04 of the agreement provided: "When a Technician's service with WCAU is terminated for any reason, except (1) discharge due to flagrant misconduct * * * he shall receive severance pay * * *."

The arbitrator found "just cause" instead of the "flagrant misconduct" asserted by the company.

The Supreme Court has said:

" * * * To be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 [of the Labor Management Relations Act, 29 U.S.C. § 185] must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 582, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

The case of United Steelworkers of America v. Warrior & Gulf Co., supra, involved a situation where a union was attempting to enforce an agreement to arbitrate and, of course, the case was decided before the arbitrator had made a decision. The principles stated therein, however, were applied immediately to a case where an arbitrator had rendered a decision and the union was attempting to enforce it, United Steelworkers of America v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The present case involves a situation where no one is attempting to enforce an arbitrator's award but where a union is attempting to upset an award by an arbitrator. However, there is no reason why the principles enunciated in the two Steelworkers cases as to the strength of an arbitration clause in a collective bargaining agreement and an arbitrator's award resulting therefrom should not be applied to the present case.

Both sides in the present case agreed in the collective bargaining agreement to arbitrate grievances such as the one which has caused the dispute in the present case and they gave the arbitrator power to make the award which he made. All plaintiff's contentions must be denied because taking them separately or as a whole this court would exceed its power as it is limited by the Supreme Court decisions if it should attempt to reverse the award of the arbitrator.

Comment on two of plaintiff's contentions is in order.

As to the contention concerning Freedman's refusal to stand cross-examination, the effect of that refusal, and the conclusion to be drawn therefrom, it is obvious from Freedman's testimony that he did refuse to answer questions about the source of the memoranda on cross-examination.[3] The arbitrator's conclusions from Freedman's refusal to stand cross-examination on this vital question were entirely justified.

As to the contention that the arbitrator ignored the 14-day notice required for a "just cause" discharge, the arbitrator mitigated the punishment (on defendant's concession that a finding of "flagrant misconduct" was not necessary to sustain the discharge) by allowing Freedman severance pay of $2,000 and salary of $400 for the 14-day period and thus awarded him everything to which he was entitled after a "just cause" discharge.

There is no unresolved issue of fact. Summary judgment will be entered in favor of defendant and against plaintiff.

---

3. The cross-examination (N.T. 55) began:
"Q Who is the person who showed you Exhibit No. 1 [the memoranda]?
"A I didn't * * * (witness stops speaking)
"Q What is your answer?
"A I didn't give an answer."

After objections and arguments, the next question and answer (N.T. 58) were:
"MR. SOUSER: Then I understand the witness refuses to answer the question?
"THE WITNESS: Yes."